UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| NELIDA PRADO,<br><br>        Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>        Defendant. | Case No. 18-cv-02405-PJH (LB)<br><br>**ORDER ADJUDICATING JOINT DISCOVERY LETTER BRIEF AND DENYING DEFENDANT'S REQUESTS**<br><br>Re: ECF No. 52 |

## INTRODUCTION

Plaintiff Nelida Prado alleges that the consumer-credit-reporting agency Equifax Information Services LLC "mixed" her credit file with her sister's.[1] Ms. Prado has perfect credit history.[2] Her sister, however, has a number of credit accounts with derogatory information.[3] As a result of Equifax's "mixing" Ms. Prado's file with her sister's file, Equifax allegedly reported (incorrectly) to Ms. Prado's credit-card companies that Ms. Prado had a "serious delinquency" on a number of her credit accounts.[4] In response, Ms. Prado's credit-card companies significantly lowered her

---

[1] Compl. – ECF No. 1 at 3–5 (¶¶ 12–29). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5 (¶ 29).

[3] *Id.* at 7 (¶ 41).

[4] *Id.* at 7 (¶ 41), 8 (¶ 48), 10 (¶ 54), 11 (¶ 55).

ORDER – No. 18-cv-02405-PJH (LB)

credit limits and denied Ms. Prado's requests to have her original limits reinstated.[5] Equifax also allegedly failed to respond adequately to Ms. Prado's attempts to have it correct its errors.[6] Ms. Prado claims that that Equifax thereby violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b) and 1681i, and the California Credit Reporting Agencies Act, California Civil Code §§ 1785.14(b) and 1785.16.

At issue now are two discovery requests by Equifax. First, Equifax demands that Ms. Prado produce her sexual and gynecological history from her medical records, in full and without redaction. (Ms. Prado has already produced all of her medical records for the past seven years, except for sections relating to her sexual or gynecological history, which she redacted or withheld; Equifax demands she produce these remaining sections.) Second, Equifax demands that she produce (or authorize production of) her complete employment file from her employer, in full and without redaction. (Ms. Prado offered to produce those portions of her employment file (if any) that relate to the impact Equifax's alleged credit misreporting had on her work; Equifax demands that she produce her entire employment file.)

Equifax states that Ms. Prado alleges emotional distress in connection with her FCRA claim, including that she suffered stress and missed work due to the stress of Equifax's alleged credit misreporting. Equifax argues that it needs Ms. Prado's full sexual- and gynecological-history medical records and her full employment file to see if those documents say that Ms. Prado suffered stress from other sources or had negative work performance for other reasons. Equifax offers no basis for its assertion that Ms. Prado's sexual- or gynecological-history medical records or her employment file contains such information, beyond a general claim that it wants to review the documents for itself.

The court held a hearing on March 21, 2019, and now denies Equifax's requests.

---

[5] *Id.* at 7 (¶ 42) (Macy's reducing her credit limit from $2,300 to $300), 8 (¶¶ 45, 48) (Citi reducing her credit limit from $6,000 to $500), 9 (¶ 52), 10 (¶ 55).

[6] *Id.* at 6 (¶¶ 32–38), 8 (¶¶ 46–47), 9 (¶¶ 49–51, 53), 10–11 (¶¶ 56–63).

ORDER – No. 18-cv-02405-PJH (LB)     2

**STATEMENT**

**1. Sexual- and Gynecological-History Medical Records**

Equifax issued a document request to Ms. Prado that reads, "[i]f you are claiming damages based on medical or mental anguish, please produce all documents relating or referring to any medical or mental treatments you received in the past seven years."[7]

Following a discovery dispute and various meet-and-confers, Ms. Prado produced all of her medical records, except for sections relating to her sexual and gynecological history, which she redacted or withheld.[8] Equifax demanded that Ms. Prado produce the redacted or withheld sections.[9] On February 22, 2019, Ms. Prado proposed as a compromise that she provide these sections to the court for in camera review.[10] On February 28, 2019, the court ordered the parties to further meet and confer.[11] On March 14, 2019, the parties submitted a joint letter brief, in which Equifax reiterated its demand that Ms. Prado produce her sexual- and gynecological-history medical records, "in full, without red[a]ction."[12]

On March 15, 2019, the court asked Ms. Prado whether she would submit her medical records in camera.[13] Ms. Prado did so. The court reviewed the sections at issue and finds that they contain no discussions of stress or other emotional distress.

**2. Employment File**

It is undisputed that Equifax did not issue a document request specifically for Ms. Prado's employment file.[14] Fact discovery is now closed. Equifax argues that Ms. Prado's employment file

---

[7] Joint Discovery Letter Br. – ECF No. 33 at 2.

[8] Joint Discovery Letter Br. – ECF No. 52 at 4.

[9] Def. Email – ECF No. 50-1 at 4–5.

[10] Pl. Resp. – ECF No. 50 at 3.

[11] Order – ECF No. 51 at 4.

[12] Joint Discovery Letter Br. – ECF No. 52 at 3.

[13] Order – ECF No. 53.

[14] Joint Discovery Letter Br. – ECF No. 52 at 5; *accord id.* at 3.

is covered by its request for "all documents relating or referring to whether [Ms. Prado] suffered mental distress, embarrassment, humiliation, mental anguish, mental distress or any types of injury as a result of the conduct alleged in this suit[.]"[15]

Equifax argues that "[t]he file is relevant because Plaintiff testified that to determine when she missed work, she would need to review her employment records."[16] It further argues that "the employment file would show if there is any record of the alleged negative impact on her work performance."[17] It further argues that "the file would likely show if there were any issues in general with her work performance and/or missed work for other reasons."[18] Ms. Prado responds that Equifax had the opportunity to formally request or issue a subpoena for her employment file before the close of fact discovery and elected not to do so.[19] Ms. Prado notes that Equifax deposed some of her coworkers, so it had the opportunity to conduct discovery on employment topics.[20] Ms. Prado additionally argues that she has a privacy interest in her employment records.[21] Ms. Prado expressly disclaims seeking any damages for lost wages or missed work and argues that it is unclear what else Equifax hopes to gain from these records.[22] Equifax acknowledges that Ms. Prado offered to produce those portions of her employment file (if any) related to the impact Equifax's alleged credit misreporting had on her work, but it demands that Ms. Prado produce her full employment file, "in full, without red[a]ction."[23]

---

[15] *Id.* at 3.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.* at 5.
[20] *Id.*
[21] *Id.* at 6.
[22] *Id.*
[23] *Id.* at 3.

# ANALYSIS

## 1. Sexual- and Gynecological-History Medical Records

Federal Rule of Civil Procedure 26(b)(1) limits discovery to matters that are (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Courts recognize that legitimate privacy interests are a consideration in evaluating proportionality. *Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (citing cases). Additionally, Federal Rule of Civil Procedure 26(c)(1) authorizes courts "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

The court first addresses the relevance to this credit-reporting dispute of the sexual- and gynecological-history medical records at issue. Put simply, there is none. The court knows this because Ms. Prado offered to submit these records for review in camera — a compromise that apparently did not satisfy Equifax — and the court reviewed the records in question.

In any event, the court would have had doubts about Equifax's claim of relevance even had it not confirmed the records' irrelevance for itself. Other than generalized speculation that the records might contain discussions of stress and a generalized argument that any stress by Ms. Prado from sources other than Equifax's alleged credit-reporting violations might be relevant to a possible causation defense, Equifax offered no basis or support for its claim that the records are relevant.

Weighed against the lack of relevance of sexual- and gynecological-history medical records to a credit-reporting dispute is the significant burden of Equifax's demand. As courts have recognized, medical records regarding a patient's sexual and gynecological history "are not only sensitive, but of the highest sensitivity. Allowing any person, other than the patient or doctor, to view these records is embarrassing and potentially harassing." *Batchelor v. Merck & Co., Inc.*, No. 3:05-CV-791 JTM, 2007 WL 4179015, at *4 (N.D. Ind. Nov. 20, 2007) (citing *Mitchell v.*

*Hutchings*, 116 F.R.D. 481, 484 (D. Utah 1987)). In light of these significant privacy interests, courts rightly deny speculative requests (like Equifax's here) for a patient's sexual- or gynecological-history records in cases on unrelated matters as irrelevant and disproportional. *See, e.g.*, *id.* (denying request for gynecological records in Title VII pregnancy-discrimination case with emotional-distress component because "[t]he harassing and embarrassing burden upon [plaintiff] that exposing these records to [defendant] would cause outweighs any incremental relevancy articulated by [defendant]. Simply put, justice requires that these documents not be disclosed.") (citing cases); *Freed v. Home Depot U.S.A., Inc.*, No. 18cv359-BAS (LL), 2019 WL 183833, at *5 (S.D. Cal. Jan. 14, 2019) (denying request for gynecological records in personal-injury case because "Defendants merely speculate that Plaintiff may have discussed her alleged injury with her gynecologist . . . . Because a court can limit 'unduly burdensome discovery,' the Court GRANTS Plaintiff's Motion to modify the subpoenas for medical records and radiology records to exclude Plaintiff's gynecological . . . records (to the extent they exist)."); *EEOC v. Peters' Bakery*, 301 F.R.D. 482, 487 (N.D. Cal. 2014) (denying request for, among other things, gynecological records in Title VII racial-discrimination case with emotional-distress component because gynecological records are "wholly unrelated to any conceivable claim in this case"); *EEOC v. Woodmen of World Life Ins. Soc'y*, No. 8:03CV165, 2007 WL 649298, at *3 (D. Neb. Feb. 1, 2007) (denying request for gynecological records in Title VII gender-discrimination case with emotional-distress component because "an 'emotional distress claim does not, however, give Defendants an unfettered right to pursue discovery into the plaintiff's entire medical history'" and "the defendant has failed to make the threshold showing at this time of any relevance to this case regarding [plaintiff]'s gynecological history") (quoting *Manessis v. N.Y.C. Dep't of Transp.*, No. 02 CIV 359SASDF, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002)).

Given the private and highly sensitive nature of these medical records — and their lack of relevance (as Ms. Prado no doubt explained to Equifax, and as the court confirmed) — the court questions Equifax's continued demand for the records "in full, without red[a]ction," as opposed to earlier accepting Ms. Prado's proposed compromises (such as in camera review). Equifax has to know that the potential for embarrassment or oppressiveness in allowing it to probe into Ms.

Prado's private sexual and gynecological history is significant — and the court wonders if that is Equifax's objective. (For example, at the March 21, 2019 hearing on the discovery dispute, Equifax offered that a reason for its demanding Ms. Prado's sexual- and gynecological-history medical records was that "Equifax would be entitled to argue that if there were, you know, changes like menopausal changes and things like that, that Equifax would be able to point out that those are potentially causes of her stress."[24]) If plaintiffs fear that bringing a claim for a credit-reporting violation under the FCRA may subject their private sexual and gynecological history to discovery and scrutiny, they may be chilled from bringing FCRA claims in the first place. The FCRA is a private-attorney-general statute, and its enforcement depends on the willingness of private plaintiffs to bring claims. *Holman v. Experian Info. Sols., Inc.*, No. 11-cv-0180 CW (DMR), 2014 WL 7186207, at *3 (N.D. Cal. Dec. 12, 2014) ("A fee-shifting provision's purpose is to encourage private litigants to enforce the laws that protect the public in areas like civil rights, consumer protection and the environment. We have no doubt that Congress intended in authorizing attorney's fees in lawsuits under the FCRA to make use of the private attorney general concept. Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies.") (citations and internal quotation marks omitted). Intrusive and irrelevant discovery into highly private and sensitive aspects of plaintiffs' lives that chills their willingness to bring FCRA claims burdens not only the individual plaintiffs but also the public's interest in seeing the FCRA enforced. As the Ninth Circuit held regarding potentially chilling discovery in the context of another private-attorney-general statute (Title VII):

> The chilling effect such discovery could have on the bringing of [private-attorney-general] actions unacceptably burdens the public interest. . . . Given [the] dependence on private enforcement, we find that the [purposes of the private-attorney-general statute] would be hampered by the discovery practices [defendant] seeks to validate here. We therefore conclude that [defendant's proposed] discovery . . . constitutes a substantial burden, both on the plaintiffs themselves and on the public interest in enforcing [the statute].

---

[24] Equifax also requested that it be allowed to re-depose Ms. Prado after it obtains her sexual- and gynecological-history medical records, i.e., that it be given an opportunity to further probe Ms. Prado regarding her sexual and gynecological history. *See* Joint Discovery Letter Br. – ECF No. 52 at 3.

ORDER – No. 18-cv-02405-PJH (LB)  7

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065–66 (9th Cir. 2004).

The court denies Equifax's request for Ms. Prado's sexual- and gynecological-history medical records.

**2. Employment File**

Ms. Prado offered to review her employment file and produce those portions (if any) related to the impact Equifax's alleged credit misreporting had on her work, in lieu of her entire employment file. Equifax has no basis for demanding more.

Equifax offers three reasons for demanding Ms. Prado's employment file: (1) it would show when she missed work, which Ms. Prado claims she did due to the stress of Equifax's alleged credit misreporting, (2) it may show records of the negative impact on her work performance of Equifax's alleged credit misreporting, and (3) it may show records of issues with her work performance or missed work for other reasons.[25] Ms. Prado's offer to produce those portions of her employment file (if any) related to Equifax's alleged credit misreporting addresses the first two items. Equifax has no basis for demanding Ms. Prado's employment file as it relates to the third item. The document request that Equifax claims covers its demand for Ms. Prado's employment file was for "all documents relating or referring to whether [Ms. Prado] suffered mental distress, embarrassment, humiliation, mental anguish, mental distress or any types of injury *as a result of the conduct alleged in this suit*[.]"[26] Records of issues (if any) with Ms. Prado's work performance or missed work for other reasons are not covered by Equifax's request.

Equifax argues that if any portion of Ms. Prado's employment file is responsive, Ms. Prado must produce her entire employment file. The court disagrees that Equifax's request can be construed so broadly, but in any event, even assuming it could, in light of the likely overbreadth of Ms. Prado's full employment file, its limited relevance, and Ms. Prado's reasonable privacy interests therein, the court finds good cause under Rule 26(c)(1) to order that Ms. Prado may

---

[25] Joint Discovery Letter Br. – ECF No. 52 at 3.

[26] *Id.* (emphasis added).

redact or withhold those portions of her employment file unrelated to the impact Equifax's alleged credit misreporting had on her work. *Cf. Estate of Nunez ex rel. Nunez v. Corr. Physicians Med. Grp., Inc.*, No. 16cv1412-BEN-MDD, 2017 WL 4181358, at *3 (S.D. Cal. Sept. 21, 2017) (even where the court has entered a protective order, court can further limit discovery of employment files under Rule 26(c)(1) given risk of "annoyance, embarrassment or oppression that [individuals] may experience by having their personnel files exposed").

If the parties have disputes regarding the scope of Ms. Prado's production of those portions (if any) of her employment file that relate to the impact Equifax's alleged credit misreporting had on her work, they must meet and confer, and then, if they are unable to resolve their disputes, they may raise their disputes with the court. But the court denies Equifax's request for Ms. Prado's full employment file.

## CONCLUSION

The court denies Equifax's requests.

**IT IS SO ORDERED.**

Dated: March 22, 2019

LAUREL BEELER
United States Magistrate Judge